UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ROBERT L. EPSTEIN                                          :
                                                           :
                          Plaintiff,                       :
                                                           :     09 Civ. 8696 (HB)
           - against -                                     :
                                                           :     OPINION &
                                                           :     ORDER
ROY B. THOMPSON and THOMPSON                               :
BOGRAN, P.C.                                               :
                                                           :
                          Defendant.                       :
                                                           :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., U.S.D.J.:**

        Plaintiff Robert Epstein ("Epstein"), a New York patent attorney, commenced this action on October 15, 2009 against Roy Thompson ("Thompson"), an Oregon attorney, and his law firm, Thompson Bogran, P.C. ("Thompson Bogran") (together, "Defendants"). The Complaint alleges claims for defamation and tortious interference with business relations. Defendants moved to dismiss the Complaint on January 22, 2010, while the case was pending before the Honorable Denny Chin. On May 10, 2010, after the motion was fully briefed, the matter was reassigned to me. For the reasons that follow, Defendants' motion to dismiss the Complaint is granted.

        **I.    FACTUAL BACKGROUND**

        Plaintiff is a patent attorney who practices in New York as a partner in the law firm of Epstein Drangel Bazerman & James, LLP. Am. Complt. ¶¶ 1, 11. Since 1985, Plaintiff has represented RTI, a New York company whose business is primarily to

exploit telecommunications patents of its own, or through infringement litigation. *Id.* ¶¶ 17-19.

Defendant Thompson is a partner in the law firm of Thompson Bogran, P.C. which is located in Portland, Oregon. Although Thompson was admitted to the New York bar in 1980, his registration has lapsed and he has not practiced in New York since 1982. *Id.* ¶ 6; Thompson Aff. ¶ 2, 4.

In December 2008, the President of RTI, Gerald Weinberger, wrote to a company called Viper Networks, Inc. ("Viper"), accusing it of infringing RTI's patents. *Id.* ¶ 24. In response, Viper filed a declaratory judgment action in the United States District Court for the Southern District of California (the "California Litigation"). *Id.* ¶ 25. RTI asked its outside counsel, Epstein, to handle the California action, with the goal of transferring the case to New York, where it could be consolidated with a case that RTI had filed against Viper in this district (the "New York action"). *Id.* ¶¶ 26, 28.

Early in 2009, Thompson Bogran entered into an association with three other law firms, located in Oregon, California, and Texas, to market their services as the Pacific Patent Law Group ("PPLG"). Complt. ¶ 29-30. In April 2009, one of the lawyers in the PPLG group contacted RTI to propose that PPLG defend RTI in the California Litigation, and on April 29, RTI retained the PPLG member firms. *Id.* ¶ 32, 33; *see* Thompson Aff. ¶ 9 & Ex. B (Retention Agreement). As a member of PPLG, Thompson represented RTI in the California litigation. Although RTI is a New York company, Thompson did not travel to New York for purposes of his work on the California Litigation—or for any other purpose—during his representation of RTI. *Id.* ¶ 12. Neither Thompson nor any

other member of PPLG played any role in RTI's companion litigation in New York.  *Id.* ¶ 10.

The representation of RTI by Thompson and PPLG was short-lived.  On July 29, 2009, Thompson moved to withdraw from the RTI litigation.  Complt. ¶ 37. According to Plaintiff, a key issue that led to the withdrawal was RTI's allegation of legal malpractice by PPLG.  Complt.  ¶ 38.  By contrast, Defendants assert that RTI's motive was to avoid paying its bills—they say that when PPLG requested payment, RTI claimed, for the first time, that it was displeased with the quality of PPLG's representation.  *See* Def. Br. 4; Thompson Aff. ¶ 14.  The California court granted Thompson's motion to withdraw on August 4, 2009.

While Thompson's motion to withdraw was pending, the parties continued to exchange emails about the reasons for PPLG's withdrawal from representation.  Complt. ¶ 39.  During this series of communications, Thompson sent an email that Plaintiff alleges was defamatory.  That email reads in pertinent part: "On a final note however and of greatest concern to Thompson & Bogran however is the statements of Robert Epstein.  You remember the 'class act' you so heartily endorse.  I seem to recall him telling me something about you having back dated, forged, or falsified documents relating to the development of your inventions." Complt. ¶ 42.  The email was sent to Weinberger, the President of RTI, with copies to Plaintiff Epstein, Amy Bogran, Mark Huber, Rick Klingbeil, and Merissa Coleman-Bishop.  Other than Weinberger and Epstein, all recipients of the email were lawyers and members of PPLG.  Pl. Opp. Br. 4.

3

## II.     DISCUSSION

Defendants move to dismiss the Complaint on two grounds:  First, pursuant to Rule 12(b)(2), they assert that this Court lacks personal jurisdiction over Defendants, who reside in and are located in Oregon.  Second, pursuant to Rule 12(b)(6), Defendants argue that the Complaint fails to state a claim upon which relief can be granted.  For the reasons discussed below, this Court finds that it lacks personal jurisdiction over Defendants, and therefore need not reach the question of whether the Complaint fails to state a claim.

When a federal court sits in diversity, it must "determine whether there is jurisdiction over the defendant under the relevant forum state's laws." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendants.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  *Best Van Lines v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

New York's long-arm statute authorizes a court to exercise personal jurisdiction over a non-domiciliary who, with respect to the specific transaction at issue in the lawsuit: "(1) transacts any business within the state…; or (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; or (3) commits a tortious act without the state causing injury…within the state, *except as to a cause of action for defamation of character arising from the act*." N.Y. C.P.L.R. § 302(a) (emphasis added).

Importantly for present purposes, sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries within the state, explicitly exempt from their scope causes of action for defamation.  *See Best Van Lines*, 490 F.3d at 244-45.  Despite these express exclusions for defamation under sections 302(a)(2) and (3), New York courts have interpreted the law so that "[u]nder New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1)."  *Best Van Lines*, 490 F.3d at 246.  Thus, personal jurisdiction over Defendants exists, if at all, only under section 302(a)(1).

### *(a) This Court Lacks Jurisdiction over the Defamation Claim Under Section 302(a)(1)*

To determine the existence of personal jurisdiction pursuant to section 302(a)(1), courts evaluate (1) whether the defendant transacts any business in New York, and, if so, (2) whether the plaintiff's causes of action arise from defendant's business transactions in the state.  *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,* 7 N.Y.3d 65, 71 (2006).  Courts look to the "totality of the defendant's activities within the forum" to determine whether a defendant has "transact[ed] business in such a way that it constitutes "purposeful activity" satisfying the first part of the test.  *Best Van Lines*, 490 F.3d at 246 (citing *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975)).  "A non-domiciliary defendant transacts business within the state when he purposefully avails himself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *see also Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F.Supp.2d 98, 103 (S.D.N.Y. 2010).  Although section 302(a)(1) may include

5

a cause of action for defamation, New York courts interpret "transacting business" more narrowly in defamation cases than they do in other sorts of litigation. *Best Van Lines*, 490 F.3d at 248. While a "single act" in New York may be sufficient to invoke long-arm jurisdiction, in defamation cases, the "*single act of uttering a defamation*, no matter how loudly, is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction." *Id.* (emphasis mine).

Here, Plaintiff has failed to show that Defendants "transact[ed] business" in New York. Thompson's only alleged contacts with New York are a series of telephone calls, email communications, and documents sent to his New York client, RTI. The fact that an attorney's client resides in New York does not mean that the attorney transacts business in New York. *See Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982). Nor do contacts between out-of-state attorneys and New York clients confer jurisdiction over the attorneys, where, as here, the attorneys perform all legal work outside New York. *Bank Brussels Lambert v. Fidler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999). Thompson never traveled to New York during the course of his representation of RTI. The Complaint alleges only that Thompson was engaged to perform legal services in Oregon for a case in California, and that he communicated with his client and co-counsel in New York. Thompson's representation of RTI in California, simply does not suffice to bring Thompson within the reach of New York's long-arm statute on a defamation allegation by Epstein.

Plaintiff also argues that Defendants are amenable to jurisdiction in New York because the initial solicitation letter sent by PPLG to RTI said, "we travel and litigate coast to coast. I can meet with you…at your convenience, *in your home town*, and for no

charge." Pl. Opp. Br. 9; Epstein Dec. ¶ 9, Ex. 1 (emphasis added). This letter was not sent by Thompson. It merely constitutes an offer by *another member* of PPLG to meet with RTI in New York. Solicitation of business within the state does not constitute the transaction of business within the state. *See Bank Brussels Lambert*, 171 F.3d at 787 (no jurisdiction over law firm that solicited business in New York); *O'Brien v. Hackensack Univ. Med. Ctr.,* 305 A.D.2d 199, 201 (N.Y. App. Div. 2003) (no jurisdiction over New Jersey hospital that solicited business from New York patients). However, even if the solicitation letter sent to New York constituted the transaction of business in this state, "jurisdiction over a professional corporation does not result in personal jurisdiction over the shareholders thereof." *Somer & Wand, P.C. v. Rotondi*, 219 A.D.2d 340, 343 (N.Y. App. Div. 1996). The solicitation letter does not provide a basis for this Court's exercise of jurisdiction pursuant to section 302(a)(1) over Thompson or Thompson Bogran, P.C.

All that is left is the allegedly defamatory email, which Thompson typed and sent while on vacation in Mexico, and which was received by Weinberger and Epstein in New York. This allegedly defamatory message cannot serve as a basis for this Court's exercise of jurisdiction over Thompson, because "New York courts do not interpret 'transacting business' to include mere defamatory utterances sent into the state." *Best Van Lines*, 490, F.3d at 248. Accordingly, this Court lacks personal jurisdiction over Defendants with respect to Plaintiff's defamation claim.

### *(b) This Court Lacks Jurisdiction Over the Tortious Interference Claim Under §§ 302(a)(2) and (3)*

Plaintiff argues that although sections 302(a)(2) and (3) explicitly exempt jurisdiction over claims sounding in defamation, jurisdiction exists over the tortious interference with contract claim, which is separately pleaded. Unfortunately for plaintiff,

7

the law in this Circuit is clear that where, as here, "the entire complaint sounds in defamation," additional causes of action "do not independently establish personal jurisdiction." *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152 (2d Cir. 1996); *see also Morsy v. Pal-Tech*, No. 07 Civ. 2143, 2008 WL 3200165 at *5 (S.D.N.Y. Aug. 7, 2008). Because plaintiff's tortious interference claim is based on Thompson's allegedly defamatory email, the tortious interference claim sounds in defamation, and sections 302(a)(2) and (3) are unavailable as the basis for jurisdiction.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED. The Clerk of Court is directed to close this case and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**August __, 2010**

_____
U.S.D.J.